UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| THE INTERNATIONAL ASSOCIATION OF PRIVACY PROFESSIONALS, INC. <br><br> Plaintiff, <br><br> v. <br><br> HOUSTON CASUALTY COMPANY <br><br> Defendant. | CIVIL ACTION NO. 1:21-cv-970 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff The International Association of Privacy Professionals, Inc. ("IAPP"), by and through its legal counsel and for its Complaint against Defendant Houston Casualty Company ("HCC"), states as follows:

### Nature of the Action

1. IAPP generates a significant percentage of its revenue from hosting privacy professional events. As a result, IAPP typically procures insurance to protect it for the losses it incurs of one of its events must be cancelled.

2. HCC, an insurer, marketed and agreed to provide event cancellation coverage to IAPP, including specific coverage for events cancelled as a result of a communicable disease outbreak. IAPP paid a significant premium to procure that coverage, and HCC later confirmed in writing that coverage had been bound on those terms.

3. But when IAPP was forced to cancel certain of its events as a result of the Coronavirus (a communicable disease), HCC refused to provide any coverage. Instead, HCC purports that it unilaterally modified its own policy post-hoc to add a specific exclusion for losses caused by the Coronavirus. This exclusion was not part of the insurance terms that the parties agreed upon; rather, it was only added after coverage had been bound without the exclusion and

1

after HCC had started to worry about Coronavirus exposure under its event cancellation insurance programs.

4. HCC's conduct is the pandemic-era equivalent of entering an agreement to provide hurricane insurance coverage, but then unilaterally adding a hurricane exclusion to the insurance policy after seeing reports that a hurricane would make landfall imminently. HCC's coverage position is inconsistent with the agreement of the parties, violates basic tenets of contract law, and amounts to, among other things, a breach of HCC's duty of good faith. IAPP is entitled to the benefit of its bargain—the benefit it paid to obtain.

## Parties

5. IAPP is a non-profit membership association of privacy professionals, incorporated under the laws of the State of Pennsylvania with its principal place of business in the State of New Hampshire.

6. HCC is an insurance company, incorporated under the laws of the State of Texas with its principal place of business in the State of Texas. HCC regularly markets it insurance products in New Hampshire and insures against risks located in New Hampshire.

## Jurisdiction and Venue

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between IAPP and HCC and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Regarding the amount in controversy specifically, the agreed-upon insurance provided more than $890,000 in coverage and IAPP's damages—which includes the losses it suffered as a direct result of the cancellations—significantly exceeds $75,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated, in this district.

## Factual Background

### *HCC Offers to Bind Coverage Without a Coronavirus Exclusion*

9. IAPP—the world's largest and most comprehensive global information privacy community—relies upon the revenue it generates from the numerous privacy events it hosts throughout the year.

10. As a result, before hosting any event, IAPP procures event cancellation insurance for the event. That insurance generally protects IAPP against losses suffered when IAPP must cancel an event.

11. In early January 2020, IAPP submitted a completed application to HCC, an insurer, requesting event cancellation insurance coverage (among other coverages) for two of its upcoming events: the IAPP Canada Privacy Symposium 2020 and the IAPP Data Protection Intensive Deutschland 2020 (collectively, the "Events").

12. On January 7, 2020, HCC provided IAPP with an "Event Cancellation Insurance Quotation" (the "Quote"). A true and correct copy of the Quote, along with the "Specimen Policy" referenced in the Quote, is attached hereto as *Exhibit A*.

13. In general, the Quote set forth the coverage HCC was offering to provide and set forth the actions IAPP needed to undertake to bind that coverage.

14. Regarding the scope of coverage, the Quote represented that HCC would provide coverage for the Events "As per attached Specimen Policy Wording."

15. The attached "Specimen Policy" was a full policy that effectively mirrored other policies HCC previously issued to IAPP.

16. While the "Specimen Policy" included certain exclusions, it did not include any Coronavirus exclusion.

17. To the opposite, if elected by IAPP, the "Specimen Policy" dictated that coverage would be provided where IAPP's Events were cancelled as a result of a communicable disease outbreak.

18. The Quote stated that the limit of coverage for the IAPP Canada Privacy Symposium 2020 would be $601,775 and the limit of coverage for the IAPP Data Protection Intensive Deutschland 2020 would be $290,847.

19. Regarding the actions needed to bind coverage, the Quote represented that coverage would be bound once IAPP: (1) submitted a signed TRIA Form; (2) submitted a signed Quote Declaration; and (3) advised HCC as to what activities would be held indoors and whether those activities could be moved inside or cancelled without a loss.

20. No other requirements were identified in the Quote, and the binding of coverage was not conditioned upon any other action from either IAPP or HCC.

### *IAPP Binds Coverage Without a Coronavirus Exclusion*

21. After reviewing the Quote and understanding the requirements for binding coverage, IAPP undertook the necessary remaining actions to fully bind coverage.

22. On January 23, 2020, IAPP expressly elected to procure the version of the policy that included communicable disease coverage for the Events—just as IAPP had done with other event cancellation policies it procured from HCC previously. Importantly, procuring insurance with communicable disease coverage required IAPP to pay an additional premium.

23. On January 27, 2020, IAPP: (1) submitted a signed TRIA form; (2) submitted a signed Quote Declaration; and (3) advised that there would be an outdoor reception at one of the events, but that the outdoor reception could be moved indoors in the event of rain.

24. The documents and information were provided to HCC at 6:53 PM on January 27, 2020. According to the express language of the Quote, the agreement was made and coverage was bound at that time.

25. Per the "attached Specimen Policy Wording," that coverage was not subject to any Coronavirus exclusion.

26. Prior to coverage being bound, HCC never informed IAPP that a Coronavirus exclusion would be included in the Policy.

27. IAPP was required to pay (and paid) the premium quoted for a policy providing communicable disease coverage without any Coronavirus exclusion.

### *HCC Confirms Coverage Without a Coronavirus Exclusion*

28. After IAPP bound coverage without a Coronavirus exclusion, HCC apparently informed Steve Perlini (not IAPP's broker, but a wholesale insurance broker that worked with IAPP's retail broker) for the first time that HCC "need[ed] to add the Coronavirus exclusion" to IAPP's policy.

29. But coverage had already been bound, and the coverage bound did not include any Coronavirus exclusion.

30. To the extent that there was any doubt regarding whether coverage was being provided without a Coronavirus exclusion, HCC resolved that doubt when it issued its formal binder.

31. On February 18, 2020, after IAPP's premium payment had been made and accepted, HCC issued a "formal binder" that identified the coverage IAPP procured for the events (the "Binder"). A true and accurate copy of the Binder is attached hereto as ***Exhibit B***.

32. The Binder stated that coverage "ha[d] been effected" for the Events on the terms identified in the Binder.

33. Specifically, the Binder confirmed that coverage was being provided pursuant to the "Specimen Policy" that HCC provided on January 7, 2020. Again, that "Specimen Policy" provided on January 7, 2020, did not include any Coronavirus exclusion.

34. The Binder also confirmed that the limit for the IAPP Canada Privacy Symposium 2020 was $601,775 and the limit of coverage for the IAPP Data Protection Intensive Deutschland 2020 was $290,847.

35. The Binder further confirmed that coverage had become effective on January 23, 2020 and was not contingent upon IAPP satisfying any additional requirements.

36. The Binder did not state that HCC would add new material items to the Policy beyond those stated in the "Specimen Policy" provided on January 7, 2020, nor did it state that HCC would add a new Coronavirus exclusion to negate the communicable disease coverage IAPP paid to procure.

37. Instead, the Binder memorialized that coverage had been bound without the Coronavirus exclusion.

38. The Binder was a valid and enforceable contract for insurance.

### *HCC Issues a Modified Policy*

39. On March 3, 2020, HCC issued an insurance policy for the Events (the "Policy") that included a new "Coronavirus Exclusion." A true and accurate copy of the Policy is attached hereto as **Exhibit C**.

40. Because the Policy included a "Coronavirus Exclusion," the Policy was not consistent with the parties' agreement, the coverage IAPP bound, the Binder, or the parties' expectations.

41. During the weeks between the issuance of the Binder and the Policy, governments around the world were implementing wide-ranging lockdowns, closures, and restrictions. In other words, IAPP was left with a different policy than it purchased, and HCC's delayed modifications meant that the market would no longer sell IAPP the policy it needed.

### *HCC Wrongfully Denies Coverage For The Events*

42. On March 5, 2020, understanding that coverage for the Events was bound without a Coronavirus exclusion (an understanding which was confirmed by the Binder), IAPP notified HCC of a potential claim relating to the Events (and other IAPP events)—specifically, the cancellation of the Events due to the Coronavirus.

43. Later, IAPP confirmed that the Events (and other IAPP events) had been cancelled due to the Coronavirus.

44. HCC agreed to provide coverage in connection with the other events that IAPP was eventually forced to cancel as a result of the Coronavirus.

45. However, HCC refused to provide any coverage in connection with the Events.

46. HCC's refusal to provide coverage for the Events was premised upon its belief that coverage was precluded by the "Coronavirus Exclusion."

47. In the months that followed HCC's initial refusal, IAPP attempted to explain the errors of HCC's coverage position. HCC, however, remained steadfast in its denial based upon the Coronavirus exclusion.

48. On November 9, 2021, HCC sent a letter, wherein HCC mispresented the scope of IAPP's claim and the coverage issued to IAPP, while reiterating that HCC would not provide coverage for the Events solely because of the "Coronavirus Exclusion." A true and accurate copy of HCC's November 9, 2021 letter is attached hereto as ***Exhibit D***.

49. Among other misstatements, HCC represented that "The premium originally quoted to IAPP, which was issued prior to the onset of the COVID-19 pandemic, did not account for the risk of loss posed by COVID-19." This is simply not true. The premium expressly accounted for communicable disease coverage, including coverage losses caused by the Coronavirus. HCC knows this because HCC provided coverage under identical policies it issued to IAPP for losses caused by the Coronavirus.

50. In this same letter, HCC later stated: "The premium remained unchanged with the inclusion of the Coronavirus Exclusion Endorsement since the risks covered by the Policy remained the same." Again, this is simply not true. If the policy HCC quoted (and later bound) did not provide coverage for losses caused by the Coronavirus in the first instance, ***there would have been no reason to add the "Coronavirus Exclusion" at all***. HCC would be excluding coverage that did not exist in the first place. Moreover, this statement suggests that HCC never provided coverage in connection with any claim made under any other policy due to a loss caused by the Coronavirus. But again, HCC knew this was not the case because it had provided Coronavirus coverage under the other identical policies it issued to IAPP.

51. To date, HCC has refused to provide coverage in connection with the Events.

52. IAPP has been damaged by HCC's actions and inactions.

53. All conditions precedent to bringing this action have been performed, have occurred, or have been excused or waived.

### Count I: Declaratory Judgment

54. IAPP repeats, realleges, and incorporates all preceding paragraphs of the Complaint as if fully stated herein.

55. HCC is required to provide coverage for the losses IAPP suffered as a direct result of the cancellation of the Events due to the Coronavirus, up to the applicable limits (in aggregate, $892,622).

56. IAPP and HCC disagree about their respective rights and obligations relating to the coverage owed, and a justiciable controversy exists between them regarding those rights and obligations.

57. IAPP seeks a declaration stating that HCC is required to provide coverage for the losses IAPP suffered as a direct result of the cancellation of the Events due to the Coronavirus, up to the appliable limits.

### Count II: Breach of Contract

58. IAPP repeats, realleges, and incorporates all preceding paragraphs of the Complaint as if fully stated herein.

59. IAPP and HCC entered a binding agreement. Under the terms of the agreement, in exchange for a premium payment from IAPP, HCC agreed to provide coverage to IAPP for loss IAPP suffered as a direct result of cancellation of the Events caused by the Coronavirus. IAPP paid, and HCC accepted, a significant premium to procure that coverage.

60. The parties' agreement did not contain a Coronavirus exclusion or otherwise preclude coverage for losses caused by the Coronavirus.

61. IAPP suffered a loss as a direct result of cancellation of the Events caused by the Coronavirus, but HCC has refused to provide any coverage to IAPP for its losses.

62. HCC has breached the parties' agreement by refusing to provide the agreed-upon, and paid-for, coverage for the Events.

63. HCC's breach of the parties' agreement constitutes a material breach and is without excuse or justification.

64. IAPP has suffered, and continues to suffer, direct, consequential, and incidental damages as a result of HCC's breach. IAPP is entitled to recover those damages from HCC.

### Count III: Reformation

65. IAPP repeats, realleges, and incorporates all preceding paragraphs of the Complaint as if fully stated herein.

66. IAPP and HCC entered a binding agreement. Under the terms of the agreement, in exchange for a premium payment from IAPP, HCC agreed to provide coverage to IAPP for loss IAPP suffered as a direct result of cancellation of the Events caused by the Coronavirus. IAPP paid, and HCC accepted, a significant premium to procure that coverage.

67. Both parties expected the terms of their agreement would be put into writing.

68. When HCC issued the Binder, the Binder made clear that coverage was being provided without any Coronavirus exclusion.

69. But when HCC belatedly issued the Policy, it included a "Coronavirus Exclusion." Thus, the Policy fails to express the intention which the parties had in making it. HCC cannot

retroactively modify the Policy to include exclusions not contemplated when the parties entered their agreement.

70. To the extent the Policy is the controlling written agreement between parties for purposes of determining whether HCC owes coverage to IAPP in connection with the Events, the Policy must be reformed to conform to the parties' expectations at the time the agreement was made. Specifically, the Policy must be reformed such that it does not include the "Coronavirus Exclusion."

71. HCC would be unjustly enriched if not required to provide coverage to IAPP in connection with the Events.

### Count IV: Bad Faith

72. IAPP repeats, realleges, and incorporates all preceding paragraphs of the Complaint as if fully stated herein.

73. Through its claims handling and wrongful denial of coverage to IAPP, HCC has breached its duties of good faith and fair dealing.

74. By refusing to provide coverage to IAPP in connection with the Events and by affirmatively misrepresenting the nature and scope of the coverage, HCC has acted with ill will, in bad faith, and without justification.

75. As a result of HCC's breach of its duty of good faith and fair dealing, IAPP has been (and continues to be) damaged and is entitled to both compensatory and punitive damages.

76. IAPP is entitled to recover those damages from HCC.

WHEREFORE, IAPP, by counsel, prays for: (1) a declaration stating that HCC is required to provide coverage for the losses IAPP suffered as a direct result of the cancellation of the Events due to the Coronavirus, up to the appliable limits; (2) a judgment in favor of IAPP and against

HCC in an amount that will fully compensate IAPP for its damages and losses resulting from HCC's breach of the contract; (3) to the extent necessary, the reformation of the Policy such that the Policy conforms to the parties' expectations and agreement and does not include the "Coronavirus Exclusion"; (4) a judgment in favor of IAPP and against HCC in an amount that will fully compensate IAPP for its damages and losses resulting from HCC's breach of its duties of good faith and fair dealing; (5) an award of punitive damages; (6) an award of fees and costs, attorneys' fees, and litigation expenses in this action, with interest; (7) an award of fees and costs incurred in connection with IAPP's investigation, analysis, and pursuit of third-parties, as necessitated by HCC's wrongful denial and breach of the contract; and (8) an award of all other just and proper relief.

    Respectfully submitted,

    The International Association of Privacy Professionals, Inc.

    By its legal counsel,

    Gallagher, Callahan & Gartrell, P.C.

Date: 11/17/2021    By: /s/ Matthew V. Burrows
    Matthew V. Burrows, Esq. (#20914)
    214 North Main Street
    Concord, NH 03301
    (603) 545-3643
    burrows@gcglaw.com

## **REQUEST FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff International Association of Privacy Professionals, Inc., by and through its legal counsel, respectfully requests that all issues herein properly triable by jury be so tried.

Respectfully submitted,

Date: 11/17/2021

By: /s/ Matthew V. Burrows
Matthew V. Burrows, Esq. (#20914)
Gallagher, Callahan & Gartrell, P.C.
214 North Main Street
Concord, NH 03301
(603) 228-1181
burrows@gcglaw.com

**ATTORNEYS FOR PLAINTIFF
THE INTERNATIONAL ASSOCIATION OF
PRIVACY PROFESSIONALS, INC.**